UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
KESTON LETT,

                        Petitioner,

      -against-

THOMAS DECKER, in his official capacity
as Field Office Director, New York City
Field Office, U.S. Immigration & Customs
Enforcement; DIANE McCONNELL, in her
official capacity as Assistant Field Office
Director, New York City Field Office, U.S.
Immigration & Customs; RONALD P.
EDWARDS, in his official capacity as
Director, Hudson County Correctional
Facility; KIRSTJEN M. NIELSEN, in her
official capacity as Secretary, U.S.
Department of Homeland Security;
JEFFERSON SESSIONS, in his official
capacity as Attorney General, U.S.
Department of Justice,

                       Respondents.
--------------------------------------------------------X

**OPINION AND ORDER**

18 Civ. 4302 (JCM)

      Petitioner Keston Lett ("Petitioner") brings this petition for a writ of habeas corpus seeking his release, or alternatively, relief in the form of a bond hearing before an immigration judge where the Government bears the burden of justifying his continued detention.[1] (Docket No. 3). Petitioner is currently in the custody of Immigration and Customs Enforcement ("ICE") pursuant to 8 U.S.C § 1225(b). (*Id.* at 2). As of the date of this opinion, Petitioner has been detained without bond for nearly ten months at the Hudson County Correctional Facility in Kearny, New Jersey. (*See* Docket Nos. 3, 23). For the reasons set forth below, the Petition is granted in part.

---

[1] This action is before the undersigned for all purposes on consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 18).

-1-

## I. BACKGROUND

### A. Factual Background and Procedural History

Petitioner, a native of Trinidad and Tobago, arrived at John F. Kennedy International Airport on October 16, 2017. (Pet.[2] at ¶ 24). Petitioner presented himself for inspection and sought admission on a non-immigrant visa. (Valdez Decl.[3] at ¶¶ 4–5). Upon inspection, officers found approximately 4.7 pounds of cocaine in Petitioner's luggage. (*Id.* at ¶ 5). Petitioner was then paroled into the United States for criminal prosecution. (Pet. at ¶ 25). On November 13, 2017, Petitioner was indicted in the United States District Court for the Eastern District of New York for importation of cocaine and possession of cocaine with intent to distribute.[4] (Opp.[5] at 7).

On December 19, 2017, Petitioner was taken into ICE custody and placed in removal proceedings. (Pet. at ¶ 25). Shortly thereafter, Petitioner filed a motion in his criminal case for an order requiring the Government to choose between: (1) releasing him from ICE custody and pursuing the criminal case against him; or (2) dismissing the criminal indictment and pursuing removal proceedings. (Opp. at 7). On January 26, 2018, Petitioner's request was granted. (*Id.*). The government notified the district court that ICE did not intend to release Petitioner from immigration custody. (*Id.* at 7–8). The district court therefore dismissed the criminal indictment against Petitioner with prejudice. (*Id.* at 8).

On January 29, 2018, Petitioner first appeared in immigration court and was assigned *pro bono* counsel. (Pet. at ¶ 28). Petitioner's counsel sought and received an adjournment for

---

[2] Refers to Petitioner's habeas corpus petition. (Docket No. 3).

[3] Refers to the declaration of ICE Deportation Officer Ariel Valdez, submitted in support of Respondent's Opposition to the Petition. (Docket No. 16).

[4] Petitioner has no other criminal history. (Pet. at ¶ 25).

[5] Refers to Respondent's Memorandum of Law in Opposition to the Petition. (Docket No. 15).

-2-

investigation and preparation of Petitioner's case. (*Id.*). On March 7, 2018, Petitioner submitted an application for asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.* at ¶ 29). According to Petitioner's asylum application, he fled Trinidad under threat of death by area gang members. (*Id.* at ¶ 30). In addition, on May 11, 2018, Petitioner filed a motion seeking termination of his removal proceedings, arguing that the Department of Homeland Security failed to meet its burden to sustain the sole charge of his removability: that Petitioner is an "alien who the consular officer or the Attorney General knows or has reason to believe is or has been an illicit trafficker in an uncontrolled substance . . . ." (Petition at ¶ 31).

On May 14, 2018, Petitioner appeared with counsel for what was scheduled as a hearing on the merits of his asylum application. (*Id.* at ¶ 32). However, the immigration judge instead set a briefing schedule on Petitioner's motion to terminate, adjourned proceedings to June 21, 2018 for a decision on the pending motion to terminate, and adjourned the individual merits hearing to July 12, 2018. (*Id.*). Thereafter, on June 21, 2018, the immigration court denied Petitioner's motion to terminate removal proceedings. (Opp. at 8). On July 12, 2018, the immigration judge again adjourned the merits hearing until August 15, 2018. (Docket No. 20). However, on August 15, 2018, the immigration judge notified Petitioner's counsel that a decision on the asylum application was not yet ready and scheduled another hearing for September 19, 2018. (*Id.*). On September 19, 2018, the immigration judge indicated on the record that "a decision was not ready, because he had neglected to assign the case to a law clerk, and thus no work had been done on the decision." (Urban Decl.[6] at ¶ 4). On October 9, 2018, Petitioner's counsel received a phone call from the clerk at the immigration court. (Docket No. 23). The clerk indicated that the immigration judge had canceled Petitioner's hearing scheduled for October 10, 2018 because a

---

[6] Refers to the declaration of attorney Claire Urban who represents Petitioner in his removal proceedings. (Docket No. 22-1).

decision would not be ready. (*Id.*). The clerk noted that a decision might be mailed in the next week. (*Id.*).

**B. Statutory and Constitutional Background**

An alien "who arrives in the United States," or "is present" in the United States but "has not been admitted," is treated as "an applicant for admission" or an "arriving alien." 8 U.S.C. § 1225(a)(1); 8 C.F.R. § 1001.1 ("Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry[.]"). Under § 1225(b), if an examining immigration officer determines that an arriving alien "is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A).

Notably, "Section 1225(b) itself contains no limitation on the length of an individual's detention," *Perez v. Decker*, No. 18 Civ. 5279 (VEC), 2018 WL 3991497, at *2 (S.D.N.Y. Aug. 20, 2018), and the Supreme Court recently held that aliens detained pursuant to Section 1225(b) are not statutorily entitled to periodic bond hearings, *Jennings v. Rodriguez*, 138 S.Ct. 830, 845 (2018). The Supreme Court did not, however, determine whether arriving aliens facing prolonged detention are entitled to a bond hearing as a matter of constitutional Due Process.[7] *See Jennings*, 138 S.Ct. at 851; *see also Otis V. v. Green*, No. 18-742 (JLL), 2018 WL 3302997, at *6 (D. N.J. July 5, 2018) ("Although *Jennings* abrogated the holdings of this and other courts finding an implicit reasonable time limitation on § 1225(b) detention, *Jennings* did not address . . . [whether] those detained under the statute, as applicants for admission, possess some rights

---

[7] The Supreme Court remanded the case to the Ninth Circuit to allow for consideration of the parties' constitutional arguments "in the first instance." *Jennings*, 138 S.Ct. at 851. On April 12, 2018, the Ninth Circuit ordered the parties to address various constitutional questions, including: "whether the Constitution requires that aliens seeking admission to the United States who are subject to mandatory detention under 8 U.S.C. § 1225(b) must be afforded bond hearings, with the possibility of release into the United States, if detention lasts more than six months[.]" *Rodriguez v. Jennings*, 887 F.3d 954, 956 (9th Cir. 2018). The Ninth Circuit has yet to release their decision.

-4-

under the Due Process Clause which may be impugned should detention under the statute become unduly and unreasonably prolonged.").

## II. DISCUSSION

Petitioner argues that his prolonged detention under § 1225(b) without an individualized custody determination hearing violates the Due Process Clause of the Fifth Amendment. (Petition at ¶ 38; Reply[8] at 5). The Government, on the other hand, maintains that as an arriving alien, Petitioner lacks "the same constitutional protections as individuals who have entered the United States." (Opp.[9] at 11). Consequently, the Government asserts that Petitioner's continued detention without a bond hearing does not violate the Due Process Clause. (Opp. at 12).

"Neither the Supreme Court nor the Second Circuit has resolved the broad question of whether an arriving alien detained pursuant to 8 U.S.C. Section 1225(b) is entitled to a bond hearing when his or her detention becomes unreasonable in violation of the Due Process Clause of the Fifth Amendment." *Brissett v. Decker*, 18 Civ. 2831 (LTS), 2018 WL 3918186, at *3 (S.D.N.Y. Aug. 16, 2018). In fact, courts in this district disagree on whether "arriving aliens" detained pursuant to Section 1225(b) have any Due Process rights. Although an arriving alien's Due Process rights may be limited in certain respects, this Court agrees with those courts that "have found that such individuals have Due Process rights that require courts to consider challenges to the length of their detentions." *Perez*, 2018 WL 3991497, at *3 (listing cases). Given the particular circumstances presented here, namely Petitioner's prolonged detention and the immigration court's responsibility for continued delays, the Court finds that Petitioner's continued detention without a bond hearing has become unreasonable. Therefore, the Court

---

[8] Refers to Petitioner's Reply in Support of his Petition for Writ of Habeas Corpus. (Docket No. 17).

[9] Refers to Respondent's Opposition to the Petition for Writ of Habeas Corpus. (Docket No. 15).

finds that Petitioner's Due Process rights require that he be afforded an individualized bond hearing during which the Government must prove by clear and convincing evidence that his continued detention is justified.

To be clear, the Court's decision should not be read to suggest that Petitioner's continued detention is no longer justified; this issue is for the immigration judge. Nor should this Court's decision be read to imply that the Government's rationale for detaining arriving aliens is irrelevant. To the contrary, the Court's holding merely recognizes that on the facts presented, the Due Process Clause entitles Petitioner to an individualized bond hearing before an immigration judge who can assess whether he presents a danger or flight risk.

**A. Arriving Aliens Have Due Process Rights**

The Fifth Amendment clearly states that "[n]o person shall be . . . deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lie at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."). While "[t]his liberty interest applies equally to aliens present within the United States," *Sajous v. Decker*, 18 Civ. 2447 (AJN), 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018), the Supreme Court has held that "certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders," *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."). It does not follow, however, that arriving aliens like Petitioner are not entitled to any Due Process protections relating to their prolonged detention. *See Perez*, 2018 WL 3991497, at *4

("[I]ndividuals detained pursuant to § 1225(b) possess sufficient Due Process rights that they can challenge their mandatory unreviewed detention."). Moreover, "[t]he Due Process Clause foresees eligibility for bail as part of 'due process.'" *Jennings*, 138 S.Ct. at 862 (quoting *United States v. Salerno*, 481 U.S. 739, 748–751 (1987)).

Respondents nevertheless contend that this Court is constrained by the Supreme Court's decision in *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953). (Opp. at 12–14). In *Mezei*, the Supreme Court held that a non-citizen who had lived in the United States for about twenty-five years but left the country for nineteen months was not entitled to due process in assessing his right to admission upon his return. *Mezei*, 345 U.S. at 208–16. Although Mezei had previously resided in the United States, he was "permanently excluded from the United States on security grounds" and "stranded in his temporary haven on Ellis Island because other countries [would] not take him back." *Id.* at 207. The Supreme Court ultimately held that Mezei's detention without a hearing at the border was lawful. *Id.* at 212 ("'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). Were this Court to find *Mezei* applicable, it would "compel the conclusion" that Petitioner's Due Process rights were not infringed because the "Constitution extends no farther than the statutory language [of § 1225(b)] itself" for arriving aliens. *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 650 (S.D.N.Y. 2018).[10]

---

[10] As of the date of this Court's decision, *Poonjani*, is the only decision in this District that relies on *Mezei* to find that arriving aliens do not have a due process right to a bond hearing. In contrast, many courts both inside and outside of the Second Circuit have found that arriving aliens "have Due Process rights that require courts to consider challenges to the length of their detentions, even if the detainees' rights are limited in other respects." *Perez*, 2018 WL 3991497, at *4; *see also Birch*, 2018 WL 794618, at *4 ("To assert that he lacks legal status as an 'admitted' alien for purposes of the INA (or any other statute) is one thing, but to assert that he is not 'in' the U.S., and therefore not entitled even to <u>diminished</u> Due Process protection, offends basic notions of fairness, justice, and liberty."); *cf. Otis V.*, 2018 WL 3302997, at 7–8 (analyzing the reasonableness of an individual's continued

The Court, however, finds *Mezei* inapplicable here.[11] As an initial matter, *Mezei* involved an individual who had already been permanently excluded from the United States prior to the filing of his habeas petition. 345 U.S. at 207–08 (explaining that Mezei "remained behind the Iron Curtain for 19 months" and thus his entry was "prejudicial to the public interest for security reasons"). As Petitioner aptly points out, Mezei therefore "had no right to further proceedings to determine whether he could remain in the country and no future ability to lawfully obtain status." (Reply at 9). Mezei sought a hearing so that he could be temporarily admitted into the United States on bond until arrangements were made for his departure abroad. *Mezei*, 345 U.S. at 207. This is in stark contrast to Petitioner, who seeks a bond hearing prior to any decision on his admission. *See Jennings*, 138 S.Ct. at 868 (Breyer, J., dissenting) ("Mezei . . . was in a sense in the position of a convicted criminal who had lost his appeal, not a criminal awaiting trial . . . ."). Moreover, the *Mezei* Court explicitly tailored its holding to the national security context, acknowledging that "[a]n exclusion proceeding grounded on danger to the national security . . . presents different considerations" than a typical deportation proceeding. *Id.* at 215–16 ("[T]o admit an alien barred from entry on security grounds nullifies the very purpose of the exclusion proceeding[.]"). Thus, *Mezei* may compel the conclusion that arriving aliens already excluded on national security grounds are not entitled to a bond hearing prior to their

---

detention under § 1225(b) without reference to *Mezei*); *Destine v. Doll*, No. 3:17-CV-1340, 2018 WL 3584695, at *4–5 (M.D. Pa. July 26, 2018) (same).

[11] Other courts have questioned *Mezei*'s relevance because it "was decided under a prior immigration statutory regime that considered immigration in terms of 'entry' and 'exclusion,' rather than the current statutory regime's consideration of 'admission.'" *Osias v. Decker*, 273 F. Supp. 3d 504, 509 (S.D.N.Y. 2017) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1140–41 (9th Cir. 2013)); *Perez*, 2018 WL 3991497, at *3; *Nord v. Decker*, 17 Civ. 3679 (VSB), 2017 WL 6403884, at *3 (S.D.N.Y. Aug. 23, 2017); *but see Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 145 (D.D.C. 2018) ("While *Mezei* may be under siege, it is still good law . . . ."). This Court does not address this argument because it finds *Mezei*'s holding to be narrow in scope and therefore inapplicable to the facts of this case.

arranged deportation. However, *Mezei* does not compel the categorical conclusion that all arriving aliens may be subject to prolonged confinement without a bond hearing.

Furthermore, when it comes to prolonged detention, the Court sees no logical reason to treat individuals at the threshold of entry seeking asylum under § 1225(b), like Petitioner, differently than other classes of detained aliens.[12] *See Sajous*, 2018 WL 2357266, at *9 ("[P]rolonged mandatory detention under § 1226(c), under certain circumstances . . . can become unreasonable such that an alien is 'entitled to an individualized determination as to his risk of flight and dangerousness.'" (quoting *Demore v. Kim*, 538 U.S. 510, 532 (2003) (Kennedy, J., concurring))); *see also Boumediene v. Bush*, 553 U.S. 723, 744 (2008) ("'[T]he practice of arbitrary imprisonments, have been, in all ages, the favorite and most formidable instruments of tyranny.'" (quoting The Federalist No. 84 (Hamilton))). Thus, while arriving aliens' rights may be limited in other respects, they possess sufficient Due Process rights to challenge their prolonged mandatory detention.

**B. Petitioner Is Entitled to a Bond Hearing**

Respondents maintain that Petitioner's detention is not indefinite, and therefore, not unreasonable. (Opp. at 18 ("[D]etention is cabined by the length of the removal proceedings[.]")). Nevertheless, an asylum seeker's "detention is often lengthy." *Jennings*, 138 S.Ct. at 860 (Breyer, J., dissenting) ("The record shows that the Government detained some asylum seekers for 831 days . . . , 512 days, 456 days, 421 days, 354 days, 319 days, 318 days, and 274 days—before they won their cases and received asylum."). "[C]ourts in this Circuit

---

[12] As Justice Breyer recently explained: "If there is no reasonable basis for treating [arriving aliens who seek asylum] worse than ordinary defendants charged with crimes, 18 U.S.C. § 3142; worse than convicted criminals appealing their convictions, § 3143(b); worse than civilly committed citizens . . . ; worse than noncitizens who have committed crimes, served their sentences and have been definitively ordered removed (but lack a country willing to take them), . . . their detention without bail is arbitrary." *Jennings*, 138 S.Ct. at 865–66 (Breyer, J., dissenting) (internal citations omitted).

have generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months." *Lopez v. Sessions,* No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at *14 (S.D.N.Y. June 12, 2018); *see Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015)[13] ("In order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention."). While this Court declines to adopt such a bright-line rule post *Jennings*, it agrees with the courts in this Circuit "that have found that, at some point, detention without a hearing offends the Due Process Clause," *Young v. Aviles*, 99 F. Supp. 3d 443, 455 (S.D.N.Y. 2015), and that "determining whether mandatory detention has become unreasonable 'is a fact-dependent inquiry requiring an assessment of all the circumstances of a given case,'" *Perez*, 2018 WL 3991497, at *4 (quoting *Sajous*, 2018 WL 2357266, at *10).

In *Sajous v. Decker*, the court examined several factors "derived from the Supreme Court's decisions in *Zadvydas* and *Demore* and adopted by courts in this circuit and elsewhere when determining whether an alien's detention has become unreasonable." 2018 WL 2357266, at *10. Although *Sajous* involved an individual detained under § 1226(c), the *Sajous* factors are "equally appropriate in the § 1225(b) context." *Perez*, 2018 WL 3991497, at *4 n.10 ("[I]ndividuals detained under § 1225(b) have the same Due Process right to not be subjected to unreasonable detention."); *see also Brissett*, 2018 WL 3918186, at *4–5 (utilizing the *Sajous* factors in a case involving a lawful permanent resident detained pursuant to § 1225(b)(2)(A)). Accordingly, to determine whether Petitioner's mandatory detention has become unreasonable, this Court must examine: (1) the length of time Petitioner has already been detained; (2) whether

---

[13] "Although the holding in *Lora v. Shanahan* was vacated by the Supreme Court's ruling in *Jennings*, its reasoning remains strong persuasive authority on this Court." *Lopez*, 2018 WL 2932726, at *14 (internal quotation marks omitted); *Sajous*, 2018 WL 2357266, at *7 ("[T]he reasoning of *Lora* remains strong persuasive authority.").

Petitioner is responsible for the delay; and (3) whether Petitioner has asserted defenses to removal. *Sajous*, 2018 WL 2357266, at *10–11. "Other factors may also be relevant, including . . . 'whether the facility for the civil detention is meaningfully different form a penal institution for criminal detention.'" *Id.* at *11 (quoting *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016)).

Applying the above factors, the Court finds that Petitioner's continued detention pursuant to § 1225(b) without access to a bond hearing is unreasonable, and thus unconstitutional, as applied to him. Petitioner has already been detained for nearly ten months and there is significant reason to believe that his detention will continue, either because a decision on his application for asylum is not yet ready, or because he would remain detained throughout the course of an appeal by either side. (Urban Decl. at ¶ 6). This "length of detention has surpassed the rough six-month threshold at which detentions become less and less reasonable." *See Perez*, 2018 WL 3991497, at *5 (finding petitioner's nine month detention unreasonable).[14]

Moreover, nearly all of the delays in Petitioner's case are attributable to the immigration court. At the conclusion of the merits hearing on Petitioner's asylum application on July 12, 2018, the judge adjourned the case for a hearing on August 15, 2018 in order to issue a decision. (Docket No. 20). Petitioner's case has since been adjourned on three additional occasions: twice because the decision was not yet ready, (*see id.*; Docket No. 23), and once because the case was inadvertently not assigned to a clerk, (Docket No. 22). "'[A]lthough an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may

---

[14] Given the paucity of cases directly on point, the Court also considered cases that assess whether the length of detention is unreasonable outside of the § 1225(b) context. *See Gil Cabral v. Decker*, 18 Civ. 4823 (JGK), 2018 WL 4521199, at *5 (S.D.N.Y. Sept. 21, 2018) (finding detention between seven to nine months unreasonable); *Sajous*, 2018 WL 2357266, at *11 (finding eight months unreasonable); *Brissett*, 2018 WL 3918186, at *6 (finding nine months unreasonable); *see also Perez*, 2018 3991497, at *4 (assessing the length of detention under § 1225(b) with reference to *Sajous*, 2018 WL 2357266, at *10, a case analyzing detention under § 1226(c)).

take.'" *Sajous*, 2018 WL 2357266, at *11 (quoting *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003)). Thus, "[w]hen an alien's detention becomes prolonged because his case has 'slipped through the cracks,' such detention is unreasonable whether the failure was caused by ICE officials, an immigration judge, an administrative clerk, or another agency such as USCIS." *Id.*

Furthermore, if granted, Petitioner's asylum application would be a complete defense to removal. *See Perez*, 2018 WL 3991497, at *5. "The Court need not inquire into the strength of the[ ] defenses—it is sufficient to note their existence and the resulting possibility that the Petitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining the Petitioner pending a final determination as to whether he is removable." *Sajous*, 2018 WL 2357266, at *11. It is also worth noting that Petitioner is detained in a county jail that is used for criminal detention. *See Perez*, 2018 WL 3991497, at *5; *see also Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015) ("Among our concerns about deprivations to liberties . . . is the reality that merely calling a confinement 'civil detention' does not, of itself, meaningfully differentiate it from penal measures.").

Accordingly, Petitioner's specific circumstances—the prolonged nature of his detention, the significant likelihood of his continued detention, his lack of responsibility for the delays, his pending asylum claim, and his continued detention in a county jail—all tip the scale in Petitioner's favor. Petitioner must therefore be afforded an individualized bond hearing.

## C. The Government Bears the Burden of Proof

Petitioner maintains that due process requires the Government to demonstrate by "clear and convincing evidence" that he possesses a risk of flight or a danger to the community. (Petition at ¶ 45). Respondents contend, however, that imposing the burden of proof on the Government would be inconsistent with § 1225(b), which provides that an applicant for

admission bears the burden of establishing that he "is clearly and beyond doubt entitled to be admitted . . . ." 8 U.S.C. § 1229a(c)(2)(A); (*see* Opp. at 19–20). The Court agrees with Petitioner that the Government bears the burden of proof.

Courts within this district have found that imposing a clear and convincing standard on the Government is "most consistent with due process." *Hernandez v. Decker*, 18 Civ. 5026 (ALC), 2018 WL 3579108, at *11 (S.D.N.Y. July 25, 2018); *Brissett*, 2018 WL 3918186, at *6; *Perez*, 2018 WL 3991497, at *6; *Sajous*, 2018 WL 2357266, at *12; *Argueta Anariba v. Shanahan*, 16 Civ. 1928 (KBF), 2017 WL 3172765, at *4 (S.D.N.Y. July 26, 2017). "It is particularly important that the Government be held to the 'clear and convincing' burden of proof in the immigration detention context because civil removal proceedings, unlike criminal proceedings, 'are nonpunitive in purpose and effect.'" *Argueta*, 2017 WL 3172765, at *4 (quoting *Zadvydas*, 533 U.S. at 690). The Court sees no reason to deviate from the analysis put forth by other courts in this district and therefore adopts it in full.

Furthermore, the Court agrees with Petitioner that an immigration bond hearing that fails to consider ability to pay or alternative conditions of release is constitutionally inadequate. (*See* Pet. Br.[15] at 22); *see also Perez*, 2018 WL 3991497, at *6; *Brissett*, 2018 WL 3918186, at *6; *Hernandez*, 2018 WL 3579108, at *12. "When a judge fails to consider ability to pay and alternative conditions of release and sets a bond amount plainly outside the reach of an individual's financial resources, such a decision amounts, for all practical purposes, to a denial of bond." *Abdi v. Nielsen*, 287 F. Supp. 3d 327, 338 (W.D.N.Y. 2018); *see also Hernandez*, 2018 WL 3579108, at *12.

---

[15] Refers to Petitioner's Memorandum of Law in support of the Petition for Writ of Habeas Corpus. Petitioner's Memorandum of Law was submitted partially under seal pursuant to this Court's Order. (Docket No. 7).

Therefore, the Government must prove by clear and convincing evidence that Petitioner's continued detention is justified. The immigration judge must also consider Petitioner's ability to pay and alternative conditions of release in setting bond.

## III. CONCLUSION

For the foregoing reasons, the Petition is granted in part. Respondents are ordered to provide Petitioner with a bond hearing consistent with this Court's Opinion by October 24, 2018. The Clerk is respectfully requested to close the case.

Dated: October 10, 2018
        White Plains, New York

**SO ORDERED:**

*Judith C. McCarthy*
JUDITH C. McCARTHY
United States Magistrate Judge